# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ELGIN L. CASTRO, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 11-0828-CV-W-BCW-P |
| LARRY DENNEY, | ) |
| Respondent. | ) |

### OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
### AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Elgin L. Castro, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 19, 2011, seeking to challenge his 2007 conviction and sentence for first degree child molestation, which was entered in the Circuit Court of Jasper County, Missouri.

The petition raises one ground for relief: that trial counsel was ineffective for failing to object to improper cross-examination of a witness. Respondent contends that the Missouri Court of Appeals reasonably disposed of petitioner's claim on appeal.

### SUMMARY OF THE FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 Motion, the Missouri Court of Appeals summarized the facts as follows:

> On July 8, 2004, Victim and her younger brother, E.F., stayed overnight at the home of Donna and her husband, Clarence Pease, who were friends of the family. [Petitioner] lived with Donna at the time and was present the night Victim and E.F. visited. During the visit, [petitioner] played "cops and robbers" with the children. At one point, [petitioner] sat on top of Victim, holding her down. She told him to get off, but [petitioner] refused to budge. E.F., who was eight years old, tried to defend his sister by hitting [petitioner] and pulling him off of Victim. Eventually, [petitioner] let up.
>
> Victim slept on the living room couch while E.F. slept nearby on a

bed by the television. Victim woke up in the middle of the night when she felt someone's hands fondling her chest and her "potty spot." She rolled over and recognized [petitioner] as the person who touched her. Victim ran into the kitchen to grab the cordless telephone and then shut herself in the bathroom, where she called her mother. Victim's mother then picked up both children. After Victim explained what had happened, her mother called the police.

At trial, Victim identified [petitioner] as the person who was touching her that night. E.F. also testified about trying to pull [petitioner] off his sister earlier that evening. After the children testified, the State rested. The defense then called several witnesses, including Donna and [petitioner]. On rebuttal, the State called one witness, Deputy Ron Thomas (Deputy Thomas) of the Jasper County Sheriff's Department.

Donna was first to testify for the defense. Donna testified that she heard Victim crying in the middle of the night and went to check on her. She said that she gave Victim her cell phone so Victim could call her mother. Donna also testified that, during the night in question, [petitioner] was "in his bedroom sound asleep." On cross-examination, the following colloquy occurred:

> Q: [Y]ou're telling this jury in fact that [petitioner] never came out into that living room, is that correct?
>
> A: Not as far as I remember.
>
> Q: And so if [petitioner] told the police officer that he was in the room standing right next to [Victim] and putting a blanket on her, then [petitioner] was lying to the police, wasn't he?
>
> A: Yes.
>
> Q: Because he wasn't in there according to you?
>
> A: No, he was not. [My husband] was the only one in the room at the time.
>
> Q: So if that's what [petitioner] said to the police, then [petitioner] was lying to the police, is that what you're telling us? That [petitioner] lied to the police?

>A: If he said it.
>
>Q: And--
>
>A: But I don't think he did.
>
>Q: And if [petitioner] wasn't in the room, then [he] couldn't have seen any dogs jumping up on the couch, could he?
>
>A: No.
>
>Q: And so if [petitioner] told the police that a dog must have jumped up there and touched [Victim], then again he'd be lying, wouldn't he?
>
>A: No.

At that point, defense counsel asked to approach the bench. He objected to the final question, noting that "[i]f someone is saying it must have been a dog, then it's a surmise on their part, it's not necessarily a lie...." The court overruled the objection.

Later, [petitioner] testified in his own defense. He claimed that he was asleep in his bedroom the night he allegedly molested Victim and didn't "remember anything with [Victim]." He said that when he gave a statement at the sheriff's department a few days later, he speculated that a dog may have jumped up on the couch with Victim. He said that he did not recall saying anything about covering Victim with a blanket.

On cross-examination, the prosecutor asked [petitioner] about the statement that he gave to the sheriff:

>Q: [Y]ou told the sheriff that you had gone down the hall that night and pulled the blanket up over the top of [Victim] at the very moment that she woke up and that's what woke her up, didn't you?
>
>A: No, I don't recall that.
>
>Q: So if [Deputy] Thomas comes in here and testifies to this jury, that he asked about the incident–

> [Defense counsel then objected to the question as hearsay. The court overruled the objection.]
>
> Q: [Petitioner], if [Deputy] Thomas comes and testifies to this jury and tells them that you told them that, then he'd be lying, is that correct?
>
> Again, defense counsel objected, this time asserting that [petitioner] was being asked to speculate as to whether Deputy Thomas would be lying because "[l]ying is a state of mind." The court overruled this objection.
>
> The prosecutor repeated his question whether Deputy Thomas would be lying if he testified that [petitioner] had told him that he put a blanket on Victim and woke her up. [Petitioner] responded, "I don't believe I'd say he'd be lying, but I don't recall what I said to the officer that night."
>
> On rebuttal, Deputy Thomas testified that he had spoken with [petitioner] regarding Victim's allegations. He said that [petitioner] had denied having any sexual contact with Victim, but that [petitioner] had said he covered Victim with a blanket and she woke up and started screaming at him not to touch her. Deputy Thomas said [petitioner] also speculated that perhaps a dog had jumped on top of Victim after he covered her with the blanket.
>
> At the evidentiary hearing on [petitioner's] motion for post-conviction relief, his trial counsel, King, testified about his view of the prosecutor's above-described questioning of both Donna and [petitioner]. King testified that he did not see any benefit to objecting during the cross-examination of Donna because she denied that [petitioner] was lying, adding that "[Donna] stood her ground enough that I was all right with it." King also testified that he did not believe that the prosecutor's question to [petitioner]– whether Deputy Thomas would be lying if he said [petitioner] told him that he covered Victim with a blanket– was "really damaging, especially in light of the response." In the motion court's findings of fact and conclusions of law, the court concluded that the prosecution's questions were improper and that they were not challenged by proper objections. The motion court, however, specifically determined that [petitioner] had failed to meet his burden to prove that he was prejudiced by counsel's failure to act.

(Respondent's Exhibit G, pp. 4-7).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his sole ground for relief, petitioner claims that trial counsel was ineffective for failing to object to improper cross-examination of witness Donna Pease. (Doc. No. 1, pp. 22-23).

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 Motion, the Missouri Court of Appeals disposed of petitioner's claim as follows:

> [Petitioner's] point involved alleged ineffective assistance of counsel. To determine whether an attorney provided ineffective assistance to [petitioner], we apply the standards established in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail, [petitioner] had to prove that: (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). For prejudice to exist, [petitioner] must prove "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 426 (italics in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

694. [Petitioner] must satisfy both the performance and prejudice prongs of the *Strickland* test to obtain relief. *State v. Kinder*, 942 S.W.2d 313, 335 (Mo. banc 1996). If he fails to satisfy either prong, we need not consider the other, and his claim must fail. *Marschke v. State*, 185 S.W.3d 295, 302 (Mo. App. 2006).

. . .

In his point, [petitioner] specifically argues that he was "clearly prejudiced" by King's failure to properly object to the prosecutor's questions because the outcome of the case "hinged on the credibility of both [petitioner] and Donna...." We disagree.

"The law in Missouri is clear that witnesses may not be asked to give their opinion on the truth or veracity of another witness'[sic] testimony." *State v. Bescher*, 247 S.W.3d 135, 140 (Mo. App. 2008); *Harrison v. State*, 301 S.W.3d 534, 539 (Mo. App. 2009). "This type of questioning is inadmissible in that it usurps the jury's role of determining the credibility of the witnesses." *Harrison*, 301 S.W.3d at 539. In *State v. Walters*, 241 S.W.3d 435 (Mo. App. 2007), the western district of this Court explained:

> When seeking to expose contradictory testimony, a prosecutor should not directly ask a witness if another witness is lying. Certainly, it may be acceptable for one witness to be asked about whether some aspect of the testimony of another was accurate. But to ask a witness for an opinion as to whether another witness is lying is to invite an opinion as to someone else's state of mind that the witness is not qualified to give. We do not generally invite a witness to speculate on another witness's ability to accurately perceive and remember facts; there is even less justification for allowing a witness to speculate as to whether another witness is deliberately attempting to mislead the fact finder. Such questions are argumentative and objections to them should be sustained.

*Id.* at 439 (citation omitted). While such questions are argumentative and improper, [petitioner] fails to cite any Missouri case law supporting his argument that trial counsel was ineffective for failing to properly object. In *Harrison*, a post-conviction case, this Court observed that "[petitioner] fails to cite to, nor has the

court's research revealed, any Missouri case law holding a trial counsel's failure to object to questions regarding the veracity of another witness's testimony constituted ineffective assistance of counsel." *Harrison*, 301 S.W.3d at 539. Moreover, no reversible error has ever been found in Missouri from a prosecutor asking a witness during cross-examination whether other witnesses were lying, primarily because defendants are unable to show prejudice. *See, e.g.*, *Bescher*, 247 S.W.3d at 140-41; *Walters*, 241 S.W.3d at 439; *State v. Roper*, 136 S.W.3d 891, 903 (Mo. App. 2004); *State v. Savory*, 893 S.W.2d 408, 411 (Mo. App. 1995).

In *Roper* and *Savory*, the western district observed that the prejudicial effect of the questioning was lessened because there was a dramatic difference between the testimony presented on behalf of the State and the defendant, so that the disagreement between the prosecution and defense witnesses would have been readily apparent to the jury irrespective of the prosecutor's questions. *Roper*, 136 S.W.3d at 903; *Savory*, 893 S.W.2d at 411. We reach the same conclusion here. Although it was improper for the prosecutor to ask Donna and [petitioner] whether statements by other witnesses were lies, these questions (and King's failure to adequately object thereto) cannot be considered so prejudicial that they affected the outcome of the trial. Deputy Thomas testified that [petitioner] had said that he covered Victim with a blanket on the night of the incident and that Victim woke up screaming. This testimony directly conflicted with the testimony of Donna and [petitioner] that he had remained in his bedroom, asleep, all night. This discrepancy would have been obvious to the jury even if the prosecutor had properly framed the questions in his cross-examination. These questions, while argumentative, did not tell jurors anything that they did not already know. We further note that Donna and [petitioner's] testimony was in conflict not only with that of Deputy Thomas, but also with that of Victim, who consistently identified Castro as the one who touched her that night.

In addition, like the trial counsel in *Harrison*, King did not think that the prosecutor's questions were particularly harmful to [petitioner's] case because the witnesses answered the questions well. *See Harrison*, 301 S.W.3d at 540. King testified at the evidentiary hearing that he did not believe there would have been any benefit to objecting during Donna's testimony because she stood her ground and denied that her son had lied. Similarly, counsel testified that the prosecutor's examination of [petitioner] was not really "damaging," particularly in light of the manner in

> which [petitioner] responded to the questions. This testimony supports the motion court's specific finding that, although the prosecutor's questions were improper, [petitioner] failed to establish that he was prejudiced by King's failure to properly object. The motion court judge, who presided over [petitioner's] trial and post-conviction proceeding, was in the best position to determine whether the prosecutor's questions were unduly prejudicial. *See, e.g.*, **State v. Stewart**, 296 S.W.3d 5, 12-13 (Mo. App. 2009) (noting that the trial court was in the best position to determine the prejudicial effect of inadmissible testimony concerning defendant's prior bad act). In light of all the evidence, we agree with the motion court that there is not a reasonable probability that the outcome of [petitioner's] trial would have been different had King properly objected to the prosecutor's questions. [Petitioner's] point on appeal is denied.

(Respondent's Exhibit G, pp. 2-3, 7-10).

The resolution of petitioner's sole ground by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[2]

Petitioner's sole ground for relief will be denied, and this case will be dismissed, with prejudice.

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413, 120 S.Ct. at 1523.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

      /s/ Brian C. Wimes
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   September 10, 2013.